AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>DERRICK BERNARD FARMER<br>*Defendant(s)* | )<br>)<br>)  Case No. 8:16MJ1050 TGW<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 3, 2016__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Possession with intent to distribute cocaine base (crack cocaine). |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Samuel Holsomback, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 3, 2016

_____
*Judge's signature*

City and state: Tampa, Florida

THOMAS G. WILSON, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Samuel Holsomback, being duly sworn, depose and state the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been employed in this capacity since July 2014. Prior to joining ATF, I had approximately five years of law enforcement experience at the municipal/state level. I am a graduate of the Federal Criminal Investigator Training Program and ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have successfully completed investigative training courses in the fields of narcotics investigations/operations and firearms investigations, in addition to actually conducting both state and federal felony-level criminal investigations.

2. The facts contained in this affidavit are based on my personal knowledge, and/or reliable information related to me in my official capacity by first hand observation, from other law enforcement officers involved in this investigation, and from others. This affidavit should not be construed as a complete statement of all the information generated from the investigation of the events to be described, but only those facts which I feel are sufficient to establish probable cause in support of this criminal complaint.

### Statutory Authority

3. I submit this affidavit in support of a criminal complaint charging the defendant, Derrick Bernard **FARMER** with possession of cocaine base (crack cocaine) with the intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

4.  Through consultation with law enforcement officers, review of investigative reports, and the conducting of and participation in specific investigative activity, I obtained pertinent facts essentially as follows:

### Background Facts of the Investigation

5.  On January 8, 2016, ("Hillsborough County Sheriff's Office") HCSO Detective Watts Sanderson, operating in an undercover capacity, and a confidential informant ("CI") set up a controlled purchase of crack cocaine through a phone call to Sadena Ann Raynor. Detective Sanderson and the CI met Raynor in the parking lot of the Pepperwood Apartment Complex, located at 13725 Susan Kay Drive, Tampa, Florida 33613. When Detective Sanderson and the CI met Raynor in the parking lot, Raynor was in the driver seat of a dark blue Jeep Grand Cherokee, and Jeffrey Nielsen Zaccanti was in the passenger seat. While Raynor walked over to Detective Sanderson's vehicle to talk to Detective Sanderson and the CI, Zaccanti got out of the car and walked through the apartment parking lot and out of Detective Sanderson's view.

6.  HCSO Corporal James Jackson surveilled the Pepperwood Apartment Complex. He saw Raynor drive the Jeep into the parking lot to meet Detective Sanderson, and he then saw Zaccanti step out of the car and walk to 13751 Susan Kay Drive, Apartment D, Tampa, Florida 33613 ("**APARTMENT D**"). Corporal Jackson saw Zaccanti knock on the door, at which point an unknown individual let Zaccanti into **APARTMENT D**. Approximately three minutes later, Corporal Jackson saw Zaccanti exit **APARTMENT D** and walk directly to Detective Sanderson's vehicle.

2

7. Zaccanti returned and entered Detective Sanderson's undercover vehicle. Zaccanti produced a small plastic bag containing a hard white substance. Zaccanti removed the substance from the bag, and Detective Sanderson weighed it. The substance weighed 6.9 grams. Detective Sanderson paid Zaccanti $275 in exchange for the suspected crack cocaine. Zaccanti told Detective Sanderson to contact Raynor to get in contact with him to conduct future drug transactions. Zaccanti left the car, and Detective Sanderson exchanged telephone numbers with Raynor. Detective Sanderson recorded the drug transaction on a video camera hidden on his person.

8. Detective Sanderson subsequently tested the suspected crack cocaine with a field reagent test kit, and it tested positive for the presence of cocaine. The suspected narcotics, including the plastic bag, weighed 7.5 grams.

9. On January 12, 2016, Detective Sanderson and the CI traveled to Pepperwood Apartments to conduct a narcotics transaction with Raynor and Zaccanti. Raynor called Detective Sanderson and told him to meet Raynor and Zaccanti at the Hess Mart located at 1444 E. Fletcher Ave, Tampa, Florida 33612. Upon meeting at the Hess Mart, Raynor entered the rear driver side of Detective Sanderson's vehicle. Raynor explained to Detective Sanderson that an unidentified individual could not wait any longer to complete the narcotics transaction. Raynor explained that Detective Sanderson would have to wait for the unidentified individual to return from visiting someone in jail if Detective Sanderson wanted to purchase the ounce of crack cocaine. Detective Sanderson and Raynor agreed to complete the drug transaction later that same day.

10. Later on January 12, 2016, Raynor called Detective Sanderson. Raynor told Detective Sanderson that the unidentified individual did not want Detective Sanderson to park near his residence as Detective Sanderson had done during the January 8, 2016 transaction. Raynor instructed Detective Sanderson to park north of the previous location in the parking lot. When Detective Sanderson arrived at the Pepperwood Apartments at approximately 3:00 p.m., he saw the Jeep Cherokee already parked there. Detective Sanderson parked his undercover vehicle next to the Jeep. Detective Sanderson then saw Zaccanti exit the Jeep's front passenger seat and walk towards **APARTMENT D**. HCSO Detective John Couey, conducting surveillance of this transaction, saw Zaccanti enter **APARTMENT D**.

11. While Zaccanti was away from the Jeep, Raynor entered the front passenger seat of Detective Sanderson's vehicle. Raynor showed Detective Sanderson oxycodone and morphine pills packaged in a clear plastic bag. Detective Sanderson paid Raynor $150 for the morphine pills.

12. Zaccanti returned to the parking lot and stood outside Detective Sanderson's vehicle. Raynor got out of Detective Sanderson's vehicle. Detective Sanderson saw Zaccanti remove a plastic bag containing a white substance from the pocket of his hooded sweatshirt. Detective Sanderson knew through his training and experience that the white substance was consistent with crack cocaine. Detective Sanderson saw Zaccanti hand the bag to Raynor, and then Raynor returned to the undercover vehicle and handed the bag to Detective Sanderson. Detective Sanderson paid Raynor $1,100 for the suspected crack cocaine. Raynor stepped out of the vehicle and handed the money directly to Zaccanti, and Detective Sanderson saw Zaccanti

4

count the money. Detective Sanderson recorded the drug transaction on a video camera hidden on his person. From his surveillance vantage point, Detective Couey then saw Zaccanti walk back to **APARTMENT D**.

13.  Detective Sanderson subsequently tested the suspected crack cocaine with a field reagent test kit. The substance, which tested positive for cocaine, weighed 31.4 grams (including the plastic bag).

14.  On January 28, 2016, Detective Sanderson and the CI again arranged a meeting with Raynor at the Pepperwood Apartment Complex to purchase crack cocaine. Before Detective Sanderson arrived at the complex, Detective John Couey had begun conducting surveillance of **APARTMENT D**. Detective Couey saw a black male, later identified as Derrick Bernard **FARMER**, walking in and out of **APARTMENT D**. Detective Couey saw **FARMER** exit **APARTMENT D** and leave the apartment complex in a black Chevrolet SUV. A short time later, **FARMER** returned and entered **APARTMENT D**. Law enforcement identified **FARMER** both by confirming that the SUV he drove was registered to him and by comparing surveillance photos of **FARMER** to his driver's license photograph and to a photograph in a law enforcement database.

15.  Detective Couey then saw Zaccanti arrive at **APARTMENT D** and knock on the door. **FARMER** opened the door. Detective Couey photographed Zaccanti at the door of **APARTMENT D**. Detective Couey then saw Raynor drive a dark blue Jeep Cherokee and park on the east side of the apartment complex parking lot. Detective Couey next saw Detective Sanderson arrive.

16.  When Detective Sanderson arrived at the apartment complex, he saw Raynor sitting in the driver's seat of a Jeep in the parking lot. Detective Sanderson

parked his vehicle and told the CI to call Raynor and tell her that Detective Sanderson was ready to complete the transaction. Detective Sanderson saw Raynor get out of the Jeep and walk up a staircase leading to **APARTMENT D**.

17. From his surveillance vantage point, Detective Couey saw Raynor walk to **APARTMENT D**. Raynor knocked on the door, and Zaccanti met her outside **APARTMENT D**. Detective Couey saw Zaccanti and Raynor exchange something while outside **APARTMENT D**. Detective Couey photographed the meeting between Zaccanti and Raynor. He then saw Raynor return to Detective Sanderson's undercover vehicle.

18. Detective Sanderson saw Raynor leave **APARTMENT D** clutching her stomach. Raynor walked directly to Detective Sanderson's vehicle and entered. After getting into Detective Sanderson's vehicle, Raynor removed a clear plastic bag from under her shirt containing a substance that Detective Sanderson recognized from his training and experience as consistent with crack cocaine. Detective Sanderson paid Raynor $2,200 for the crack cocaine and an additional $100 as Raynor's "cut." After completing the transaction, Raynor got out of Detective Sanderson's car and walked directly back towards **APARTMENT D**. Detective Sanderson recorded the drug transaction on a video camera hidden on his person.

19. Detective Sanderson subsequently tested the suspected crack cocaine with a field reagent test kit. The substance tested positive for cocaine and, including the plastic bag, weighed 57.1 grams.

20. On February 2, 2016, the Honorable Thomas G. Wilson, United States Magistrate Judge, issued a search warrant for **APARTMENT D**.

## Execution of Search Warrant

21. On February 3, 2016, law enforcement officers executed the search warrant on **APARTMENT D**. **FARMER** was the only person present in **APARTMENT D** during execution of the search warrant.

22. Law enforcement officers found bags containing a suspicious substance in the toilet in the bathroom. **FARMER**, being the only person in **APARTMENT D** when the officers executed the search warrant, appeared to have attempted to flush the bags down the toilet. Based on their training and experience, the officers recognized the substance in the bags as consistent with crack cocaine. The officers also found a bag containing suspected crack cocaine residue in the bathroom trash can.

23. The substance in the bags in the toilet field tested positive for the presence of cocaine and weighed 10.1 grams. Based on their training and experience, law enforcement officers on scene reported that the substance appeared to be in the form of cocaine base (crack cocaine).

24. Inside **APARTMENT D**, the officers found two Pyrex-type glasses containing suspected crack cocaine residue. Based on my training and experience, such residue is consistent with the manufacture of crack cocaine.

25. The law enforcement officers also found four larger bags each containing a large quantity of smaller baggies. Based on my training and experience, such small baggies are used to package small amounts of narcotics for distribution.

26. In addition, in the living room, the law enforcement officers found a quantity of what appeared to be marijuana, based on their training and experience.

7

27. The law enforcement officers also found three firearms in **APARTMENT D**. One firearm was in plain view on the TV stand in the living room. Another was inside a box in kitchen pantry closet. The officers found the third firearm in the bottom of the bedroom closet.

28. The law enforcement officers found mail addressed to **FARMER** in **APARTMENT D**.

29. After the law enforcement officers advised **FARMER** of his <u>Miranda</u> rights, **FARMER** told the officers he lives in **APARTMENT D** three or four days a week with his girlfriend. **FARMER** also admitted that he sold crack cocaine on February 2, 2016 for $50. He further stated that he usually sells $100 to $200 of crack cocaine per day.

30. During his post-<u>Miranda</u> interview, **FARMER** stated that the firearm the law enforcement officers found on the TV stand is his girlfriend's. **FARMER** admitted to knowing that, as a convicted felon, he could not legally possess a firearm. **FARMER** admitted to physically holding this firearm. He also admitted that the firearm was in close proximity to him when he sold narcotics. He explained that he could have used the firearm for protection in the event someone attempted to rob him.

## CONCLUSION

31.    I submit these facts as evidence that probable cause exists to believe that **FARMER** has violated the laws of the United States, specifically, possessing cocaine base (crack cocaine) with the intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Samuel Holsomback, Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me
This 3rd day of February, 2016

_____
THOMAS G. WILSON
United States Magistrate Judge

9